# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

LAKESHIA RENEE HOWELL
  Plaintiff

           : 

       v.                   :     CIVIL ACTION NO. JFM-13-811

SPRINGFIELD HOSPITAL CENTER    :
  Defendant

## MEMORANDUM

### Background

On March 14, 2013, Lakeshia Howell ("Howell"), a Maryland resident then undergoing evaluation and treatment at Springfield Hospital Center in Sykesville ("Springfield"), filed a letter complaint construed as a civil rights action pursuant to 42 U.S.C. § 1983. The complaint contained a plethora of claims surrounding Howell's alleged wrongful eviction from her apartment and her arrest during the eviction. She sought money damages and injunctive relief ordering her release and mandating she and her children be left alone. Most of these issues were dismissed by this court on initial review without prejudice to refiling. ECF No. 3.

Maryland electronic case information reveals that Howell was arrested on December 3, 2012, and charged in the District Court for Anne Arundel County, Case No. 0A00266070 with failing to obey the law and resisting arrest.[1] It appears the arrest resulted after she attempted to delay her eviction, and that the district court committed her to Springfield for evaluation in connection with the pending criminal charges. Howell was released from Springfield on April 24, 2013. On July 3, 2013, Howell, who was represented by a state public defender, was found

---

[1] *See* http://casesearch.courts.state.md.us/inquiry/inquiryDetail.jis?caseId=0A00266070&loc=28&detailLoc=DSCR.

guilty of failing to obey the law and fined $35 plus court costs. The resisting arrest charge was

nolle prossed.

On October 23, 2013, the undersigned ordered counsel for Springfield to supplement its

dispositive motion to discuss Howell's current mental competency as required under Fed. R. Civ.

P. 17(c)(2).[2]  ECF No. 12.  While indicating it has no current knowledge as to Howell's mental

status, defendant notes that Howell was found competent and ordered released from commitment

at Springfield on April 24, 2013.  ECF No. 13.  Based on this fact, a guardian is not needed and

the dispositive motion (ECF No. 5), construed as a motion for summary judgment, is now ripe

for review.  Howell's opposition responses to the dispositive motion (ECF Nos. 7-9) have been

read and considered.[3]  A hearing is not needed to resolve the case.  *See* Local Rule 105.6 (D. Md.

2011).

**Standard of Review**

Defendant has filed a dispositive motion styled as a motion to dismiss under Fed. R. Civ.

P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion

styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of

Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d

431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings

or resolve factual disputes when ruling on a motion to dismiss." *Bosiger*, 510 F.3d at 450.

However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the

---

[2] Fed. R. Civ. P. 17 states that a minor or an incompetent person who does not have a duly
appointed representative may sue by a next friend or by a guardian ad litem. The court must
appoint a guardian ad litem—or issue another appropriate order—to protect a minor or
incompetent person who is unrepresented in an action.

[3] On December 9, 2013, Howell asked for an additional two weeks to file more documents with
the court.  ECF No. 14.  To date, nothing further has been received.

pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[4]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

---

[4] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Fisher v. Md. Dept. of Pub. Safety & Corr. Servs.*, Civ. No. JFM-10-0206, 2010 WL 2732334, at *3, 2010 U.S. Dist. LEXIS 68772, at *8-10 (D. Md. July 8, 2010). Here, plaintiff received sufficient notice that the motion might be construed as a summary judgment motion pursuant to the Clerk's May 13, 2013 letter (ECF No. 6), which conforms to the mandate of *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir. 1975).

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont*, *supra*, 637 F.3d at 448-49. However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).  Plaintiff has not filed an affidavit under Rule 56(d). Moreover, I am satisfied that it is appropriate to address the defendant's motion as one for summary judgment.

Summary judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.,* 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts

showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to . . .the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

Defendant Springfield Hospital Center correctly argues that it is not a "person" amenable to suit under 42 U.S.C. § 1983.  This finding, however, does not mean the court cannot examine whether Springfield staff members acted improperly with regard to Howell's treatment while she was in Springfield's care.

As noted, on December 3, 2012, Howell was arrested after resisting an eviction from her apartment.  She was charged in the District Court for Anne Arundel County with failing to obey a police officer and resisting arrest.  Thereafter, she was committed as a patient to Springfield Hospital Center for a competency evaluation, in accordance with Md. Code Ann., Crim Proc. § 3-106(b) (2009) and Md. Code Ann., Health-General § 12-105.  ECF No. 13-1, p. 4. While at Springfield, she was diagnosed as suffering from paranoid schizophrenia. ECF No. 5, Ex. 1, ¶ 4; Exs. 3-4.  Initially, Howell refused the administration of psychotropic medications.  ECF No. 5-3, p. 1.  A clinical review panel was convened and on January 29, 2013, with Howell and a rights advisor present, the panel determined that Howell would be medicated against her will because

she was a danger to herself or to others and would remain seriously mentally ill without medication. ECF No. 5-4, pp. 2-5; *see also* ECF No. 13-1, p. 6; ECF No. 5-2, pp. 2-3. Within three months of treatment, Howell was declared competent to stand trial and was released from Springfield shortly thereafter. ECF No. 12-3, p. 2.

Involuntarily committed patients at state psychiatric facilities are afforded liberty interests under the Due Process Clause of the Fourteenth Amendment. Therefore, the court must analyze Howell's complaint within the scope of Fourteenth Amendment protections for involuntary patients at state psychiatric facilities, in order to provide such individuals with such services as are necessary to ensure their "reasonable safety" from themselves and others. *Youngberg v. Romeo*, 457 U.S. 307 (1982). Indeed, "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg,* 457 U. S. at 321- 22 (claim that hospital officials knew patient was being injured but failed to intervene; improperly restrained patient for prolonged periods; and were not providing appropriate treatment or training for his mental retardation); *see also Patten v. Nichols*, 274 F. 3d 829, 837 (4th Cir. 2001) (applying *Youngberg* standard to involuntarily committed psychiatric patients).

Under the *Youngberg* standard, the state must provide Howell with "adequate food, shelter, clothing, and medical care." *Id.* at 315. According to the Fourth Circuit, there is "no constitutionally significant difference between the nature of the protection-from-harm claims . . . and the denial-of-medical-care [claims]." *Patten,* 274 F.3d at 838.

In determining whether a substantive right protected by the Due Process Clause has been violated, it is necessary to balance "the liberty of the individual" and "the demands of an organized society." *Youngberg*, 457 U.S. at 319 (quoting *Poe v. Ullman*, 367 U.S. 497, 542

(1961)). The court applies the "professional judgment" standard, in which "the Constitution only requires that the Court make certain that professional judgment in fact was exercised." *Youngberg*, 457 U.S. at 321. Decisions made by professional are presumptively valid and "liability may be imposed only when the decision by the professional is such a *substantial departure* from . . . professional judgment, practice, or standard as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg*, 457 U.S.at 323 (emphasis added).[5]

Applying these standards here, the court finds no evidence entitling Howell to relief. At most, Howell complains that as a result of forcible medication by Springfield staff she suffered bruises from the needles. ECF No. 8-1, p. 1.[6] Nothing in her treatment constitutes a substantial departure from professional judgment or impacted Howell's health.

Furthermore, while the Due Process Clause grants Howell "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs," *Harper*, 494 U.S. 210, 221-22 (1990), such interest in avoiding forcible administration of psychotropic drugs is not unconditional, but rather a balance against the relevant state interests to determine whether her constitutional rights were violated. *See Youngberg*, 457 U.S. at 320-21. The court's role is not to determine whether Howell was dangerous, but, rather, whether Springfield personnel exercised professional judgment. *See Youngberg*, 457 U.S. at 321.

---

[5] In applying this standard, the Fourth Circuit has held that that a defendant's actions must have "so substantially departed from professional standards that their decisions can only be described as arbitrary and unprofessional." *Patten*, 274 F.3d at 843.

[6] In her various opposition responses, Howell states she was wrongfully accused of assault against Leonard Clay, who was proceeding against her for failure to pay child support. Howell admits she sprayed Clay with mace, and claims her action was justified because he raised his hand to her. ECF No. 9, pp. 2-3. The dispute between Howell and Clay and any state action between them is not at issue here and will not be examined further.

Springfield personnel exercised professional judgment in deciding to forcibly medicate Howell.  Under the standards iterated above, staff did not act improperly in treating Howell, and defendant is entitled to summary judgment in this case.  A separate order granting same and closing this case shall be entered forthwith.


  April 7, 2014                                       /s/
(Date)                                             J. Frederick Motz
United States District Judge